Filed 6/10/15  P. v. Carranza CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>EDGAR GIOVANI CARRANZA,<br><br>   Defendant and Appellant. | G049866<br><br>(Super. Ct. No. 12WF0666)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Joanne Motoike, Judge.  Affirmed.

Paul Stubb, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

Edgar Giovani Carranza appeals from a judgment after a jury convicted him of first degree residential burglary and receiving stolen property. Carranza argues the trial court erred in admitting his extrajudicial statements in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). We disagree and affirm the judgment.

FACTS

One evening about 8:00 p.m., Duc N. (Duc) pulled into his driveway. Duc saw three figures walk out of the side gate of his home. He did not see their faces, but he thought they were males with short hair. The three men left the area. Duc went into his home and found the upstairs master bedroom had been ransacked. Several items were gone, including American, Canadian, and Vietnamese currency, jewelry, a camera, a wallet containing credit cards, and a pillow case. The backdoor to the home showed signs of forced entry.

About 9:25 p.m., the same evening, Officers Rodolfo Ledesma and Brandon Walthers were on patrol in a marked patrol car when they saw a car with tinted front windows. They conducted a traffic stop. There were three men in the car, including Carranza, who drove. Walthers asked Carranza for his driver's license, registration, and proof of insurance. Officers learned Carranza's driver's license was suspended.

The officers asked the men to get out of the car, handcuffed them, and placed them in the back of the patrol car. Ledesma searched the car's passenger compartment and found a flashlight, crowbar, and three pairs of gloves. Walthers searched the car's trunk and found a pillow case containing jewelry, a wallet, credit cards, and foreign currency. Walthers asked Carranza who the items belonged to, and Carranza answered his girlfriend. When Walthers asked for her contact information, Carranza did not answer.

Officers transported the men to the police station. Carranza was arrested for receiving stolen property, and the property was inventoried. About one week later,

2

Duc and his wife went to the police station and indentified the property as theirs. Some of the credit cards were in Duc's wife's name.

An information charged Carranza with first degree residential burglary (Pen. Code, §§ 459, 460, subd. (a) (count 1), all further statutory references are to the Pen. Code), and receiving stolen property (§ 496, subd. (a) (count 2)).

Before trial, Carranza, relying on *Miranda*, moved to exclude his statements to officers at the scene regarding his girlfriend. Ledesma and Walthers testified at an Evidence Code section 402 hearing. Ledesma and Walthers conducted a traffic stop of a car with tinted windows. There were three male Hispanics in the car; Carranza was driving. Officers stopped the car near the home of one of the passengers. Officers determined Carranza's driver's license was suspended. At some point, the parents of one of the passengers came out of their house and in a "boisterous" manner questioned what the officers were doing. Because the officers were outnumbered, officers ordered the men out of the car, conducted a patdown search, handcuffed them, and put them in the back of the patrol car. Ledesma explained they did so for officer safety, to control the situation, and to conduct an inventory search of the car. Officers did not tell the men they were under arrest, but they were not free to leave. In the trunk, officers found a pillow case containing jewelry, wallets, foreign currency, and credit cards in an Asian female's name. Ledesma and Walthers believed further investigation was necessary.

Walthers asked Carranza who the items belonged to, and Carranza replied the jewelry belonged to his girlfriend. Walthers asked Carranza for his girlfriend's contact information, but he refused to give any information and then refused to answer any additional questions. Ledesma stated that at that time, he and Walthers were unaware of any residential burglaries. He and Walthers were calm and not accusatory. The questioning lasted a minute or two, and the entire encounter lasted 5 to 10 minutes.

3

They took the men to the police station.  Officers learned one of the credit cards had been stolen and arrested Carranza.

After hearing argument and reviewing the relevant authority, the trial court denied Carranza's motion to exclude his statements.  The court agreed Carranza was in custody because he was handcuffed and not free to leave.  However, the court concluded Walther's questions were not an interrogation for purposes of *Miranda* because the questions were investigatory and not accusatory.

At trial, Ledesma and Walthers testified concerning the incident.  Walthers testified concerning Carranza's statements.

The jury convicted Carranza of both counts.  After the trial court denied Carranza's motion for a new trial, the court suspended sentence on count 1 and placed Carranza on three years formal probation.  As to count 2, the court imposed a sentence of 365 days in jail and stayed that sentence pursuant to section 654.

DISCUSSION

*Miranda* warnings are required only when a person is subjected to "custodial interrogation."  (*Miranda, supra*, 384 U.S. at p. 444.)  "Custody" includes both actual custody and any situation in which a person has been deprived of his freedom of action in any significant way.  (*People v. Mickey* (1991) 54 Cal.3d 612, 648.)

Interrogation, for purposes of *Miranda*, "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.  The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police."  (*Rhode Island v. Innis* (1980) 446 U.S. 291, 301, fn. omitted.)

"Not every question directed by an officer to a person in custody amounts to an 'interrogation' requiring *Miranda* warnings.  The standard is whether 'under all the circumstances involved in a given case, the questions are "reasonably likely to elicit an

4

incriminating response from the suspect.'" [Citation.] This is an objective standard. 'The subjective intent of the [officer] is relevant but not conclusive. [Citation.] The relationship of the question asked to the crime suspected is highly relevant. [Citation.]' [Citations.]" (*People v. Wader* (1993) 5 Cal.4th 610, 637.) Custodial interrogation does not occur where an officer detains a suspect for investigation and the questioning is limited to identifying the suspect or confirming or dispelling the officer's suspicions. (*People v. Farnam* (2002) 28 Cal.4th 107, 180.)

When conducting our review of *Miranda* claims, we are required to "'accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if supported by substantial evidence. We independently determine from the undisputed facts and the facts properly found by the trial court whether the challenged statement was illegally obtained.' [Citation.]" (*People v. Thomas* (2011) 51 Cal.4th 449, 476.) *People v. Milham* (1984) 159 Cal.App.3d 487 (*Milham*), is instructive.

In *Milham*, defendant was involved in a car accident that resulted in the death of two of his passengers. (*Milham, supra,* 159 Cal.App.3d at pp. 492-493.) At the scene, an officer approached defendant and asked whether he was involved in the accident. (*Id*. at p. 499.) Defendant stated he had been driving the car and he was worried he had killed his wife. (*Ibid*.) The officer asked how the accident had happened. (*Ibid*.) Defendant answered he thought he had "blacked out." (*Ibid*.) A jury convicted him of driving under the influence. (*Id*. at p. 492.) On appeal, defendant argued the trial court should have excluded his statements to the officer because the officer did not advise him of his *Miranda* rights. (*Id*. at p. 499.) The *Milham* court disagreed, explaining the "[g]eneral on-the-scene questioning" did not present a *Miranda* violation. (*Id*. at p. 500.) The court noted the responding officer had no indication that a crime had been committed. (*Ibid*.) The court also reasoned that although the officer asked defendant questions, the officer's "suspicion of criminality" had not yet focused on defendant. (*Id*.

5

at pp. 500-501.) Finally, defendant was not in police custody at the time of the questioning. (*Id*. at p. 501.)

Here, although Carranza was in custody, a point the Attorney General concedes, Walthers' very brief "[g]eneral on-the-scene questioning" did not present a *Miranda* violation. The evidence established the entire encounter lasted no more than 10 minutes and the questioning lasted no more than two minutes. Like in *Milham*, the questioning occurred at the scene in an area where Carranza and his confederates were familiar. The men were in front of the home of one of the passengers. This was not a situation where officers transported Carranza to the police station and subjected him to a harsh interrogation. Additionally, both Ledesma and Walthers testified they approached and engaged the men in a calm and non-confrontational manner.

Most importantly, neither officer was aware a crime had been committed. Neither Ledesma nor Walthers were aware of the residential burglary when they stopped and questioned Carranza. Officers conducted a traffic stop because of a Vehicle Code violation, and it was not until they learned Carranza was driving on a suspended license and officers felt outnumbered that they placed the men in custody. The evidence demonstrated officers handcuffed the men not because they suspected they had committed a crime but instead because they felt outnumbered and wanted to control the situation. It was not until officers searched the trunk and found credit cards in an Asian woman's name did they begin investigating. Based on all the circumstances, we conclude Walthers' very brief on-the-scene questioning did not implicate *Miranda* because its purpose was to dispel the officers' suspicions. Similar to *Milham*, the questioning was investigatory and did not cross the line into the accusatory. Thus, the trial court properly denied Carranza's motion to exclude his statements.

6

## DISPOSITION

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


MOORE, J.